**STATE of Delaware**

**v.**

**Matthew PHLIPOT.**

Criminal Action Nos. IS–09–04–0355 IS–09–04–0356, IS–09–10–0774 thru IS–09–10–0800, IS–09–10–0801 thru IS–09–10–0806.

Superior Court of Delaware,
New Castle County.

Submitted: Sept. 7, 2012.
Decided: Dec. 13, 2012.

David Hume, IV, Esquire, Deputy Attorney General, Department of Justice, Georgetown, Delaware, Attorney for the State of Delaware.

Edward C. Gill, Esquire, of the Law Office of Edward C. Gill, P.A., Georgetown, Delaware, Attorney for the Matthew Phlipot.

*OPINION*

HERLIHY, Judge.

On June 10, 2010 a Sussex County jury found Matthew Phlipot guilty of two charges of rape fourth degree, six counts of tampering with a witness, and twenty-seven counts of criminal contempt. The same jury acquitted him on two other charges of rape fourth degree. Phlipot was sentenced on August 10, 2010. His convictions were upheld.[1] The mandate was issued May 19, 2011.

1. Del. May 3, 2011.

Through new counsel, he filed for post-conviction relief on March 2, 2012. This Court sought and obtained an affidavit from trial counsel on March 28, 2012. The Court mistakenly sent the affidavit directly to Phlipot and not his new counsel. That counsel responded, however, in a letter memorandum received on April 26, 2012. Because of points raised in that response, the Court was constrained to seek input from the State which has been submitted.

### Factual Background

At the time of the rape offenses, the victim, KK, was seventeen. Defendant Matthew Phlipot was thirty-two. She was attending Christian Tabernacle School near Milford. She played various sports, including basketball. The head basketball coach brought in Phlipot as an assistant. He was a respiratory therapist at Beebe Hospital in Lewes. He and KK became friendly enjoying music, sports and the good stereo system in his car. Their contact while in school was through email and text messages. She gave him her cell number.

They started to meet. She discussed her troubled background and difficulties she was having with her father, who was separated from her mother. At that point, her mother was simply not in her life. Phlipot, in turn, told her his marriage was not going well and that he was in the process of a divorce.

In January 2009, they saw more of each other and there was more hugging and kissing and holding of hands. She told him she had been thinking for a while of running away from her father and going to Illinois to live with an aunt and uncle. KK left him on January 19, 2009, and went to a friend's house. Shortly thereafter, Phlipot came to the friends house and she left with him for his house. Phlipot's wife was not home. KK and he had sex two or three times over several days. She testified that they had oral and vaginal intercourse, perhaps a total of four to six times. The oral sex proceeded the vaginal sex each time.[2]

They were together over the weekend of January 24th–25th. He gave her a diamond "Promise" ring, and on the 24th he took to Cape Henlopen State Park and up one of the former watch towers open to the public. Phlipot took her to a town in Maryland where she was supposedly going to make a connection with a bus and eventually get to Illinois. They missed the bus. Phlipot, instead, took her to a motel near the Baltimore–Washington Airport. They supposedly had sex there.

The next day, he got her on a train to Chicago. But the train either made a regular stop in Harper's Ferry or was stopped there. The authorities fore-warned she was on it, took KK off the train, detained her for a day or two, and eventually turned her over to her father who brought her back to Delaware. She still had the ring but hid it in one of her shoes.

Soon after their return here, she went to the Delaware State Police. She testified she was not completely honest with them in that first interview. She denied having sex with Phlipot. She still cared for him at that point.

KK chose to live with her paternal grandmother. Between KK's first and second interview with the police, the grandmother found the ring. That discovery prompted the second interview. Again, she denied there had been a sexual relationship with Phlipot. He had been arrested in the several weeks between KK's first and second interview with the police. The State Police interviewed her

2. The Court instructed the jury on the issue of separate or continuous acts.

for a third time about five weeks later. On this occasion, she was truthful and recited the sex experiences she had with Phlipot.

The State Police arrested Phlipot for endangering the welfare of a child. He entered a guilty plea in Family Court on February 29, 2009.[3] As part of his sentence, he was ordered to have "[n]o contact in any, by phone, by mail or any other means, directly or through a third-party with (KK)."[4]

Despite the no contact order, Phlipot sent KK numerous emails.[5] He even went so far as to create a special Yahoo! account. That account, in so many words, enabled him to create a message for KK to read but there would be no obvious "sent" or obvious "received." A subpoena to Yahoo! allowed access to that information, and KK saved, printed and gave copies of some of the emails to the State Police.[6] The emails are voluminous and need not be reviewed in detail here.

Based on all of the evidence, the jury found Phlipot guilty of two counts of rape fourth degree, six counts of tampering with a witness, and twenty-seven counts of criminal contempt. It is possible that the two not guilty verdicts on the remaining charges of rape fourth degree resulted from the jury's finding that several acts of oral sex and vaginal intercourse were continuous acts.

### Applicable Standard

Before the Court can consider Phlipot's motion, it must determine if there are any procedural bars to doing so.[7] Phlipot's motion was filed timely, less than a year after the mandate was issued.[8] Other potential procedural bars will be discussed, as applicable, to Phlipot's claims.

### A

■ Phlipot argues that the Court erred when it charged the jury that it was no defense that he did not know KK's age, or that he reasonably believed KK had reached her eighteenth birthday. His contention is that this statement of the law is applicable only to cases where the victim is less than sixteen.[9] Since KK was seventeen, the Court should not have given this charge.

The Court notes that this issue was not raised on appeal. The only issued raised on appeal was that this Court should have severed the rape charges from the ones not alleging rape. Potentially, therefore, this claim is barred for failure to raise it.[10] That bar can be overcome if Phlipot can show cause for relief and prejudice.[11] If he establishes appellate counsel, who was the same as trial counsel, failed to raise a meritorious claim, he satisfies the cause prong.[12]

To demonstrate ineffective assistance of counsel, Phlipot must show (1) counsel's representation fell below an objective standard and reasonableness and (2) counsel's deficient performance caused actual preju-

---

3.  State's Ex. No. 2.

4.  State's Ex. No. 3.

5.  State's Ex. No. 8, 10.

6.  State's Ex. No. 11.

7.  *Panuski v. State,* 41 A.3d 416, 419 (Del. 2012).

8.  Super. Ct. Cr. R. 61(i)(1).

9.  11 *Del. C.* § 762(a).

10.  Super. Ct. Cr. R. 61(i)(3).

11.  *Id.*

12.  ? ? ? *v. State,* ? ? ? ?

dice.[13] Phlipot's current counsel correctly points out that trial counsel did not directly respond to this claim. He did not address the issue of the correctness or erroneousness of the claim that the under-sixteen-is-no-defense language is inapplicable in this case.

True, as current counsel's point is, this claim of error and ineffectiveness fails. The indictment was for rape in the fourth degree. Because the charge and evidence involved sexual intercourse and not penetration, either of two ways to violate 11 *Del. C.* § 770 (rape fourth) were implicated:

1 Intentionally engages in sexual intercourse with another person, and the victim has not yet reached that victim's sixteenth birthday; or

2 Intentionally engages in sexual intercourse with another person, and the victim has not yet reached that victim's eighteenth birthday, and the person is 30 years of age or older, except that such intercourse shall not be unlawful if the victim and person are married at the time of such intercourse.[14]

KK was not, of course, under sixteen. There is a specific provision concerning mistake of age where the victim is under sixteen.[15] But that provision is inapplicable to this case due to KK's age. That does not mean, however, that the Court erred in giving the instruction it did, or that trial counsel was ineffective for not objecting at trial about it or failing to raise it on appeal. There is another section of the Criminal Code which mandated the instruction the Court gave:

Notwithstanding any provision of law to the contrary, it is no defense for an offense or sentencing provision defined in this title or in Title 16 or 31 which has as an element of such offense or sentencing provision the age of the victim that the accused did not know the age of the victim or reasonably believed the person to be of an age which would not meet the element of such offense or sentencing provision unless the statute defining such offense or sentencing provision or a statute directly related thereto expressly provides that knowledge of the victim's age is an element of the offense or that lack of such knowledge is a defense.[16]

The instruction which Phlipot now challenges was proper under Delaware law. It was not an error of the Court and there was no ineffective assistance of counsel in not objecting to the instruction at trial or failure to raise it on appeal. Without ineffective assistance there is no cause for relief under Criminal Rule 61(i)(3)(A).[17] Being unable to show cause for relief, the procedural bar of Rule 61(i)(3) applies. Further, the Court sees no basis under Criminal Rule 61(i)(5) to provide relief form this bar.

The first claim is without merit.

### B

■ Phlipot's next claim is an overlap of his first. He asserts trial counsel's unfamiliarity with the law on mistake of age meant not only a failure to object but a failure to raise the defense that his client believed KK was eighteen or older. The contention on this second claim is that he

**13.** *Guy v. State*, 999 A.2d 863, 870 (Del.2010).

**14.** 11 *Del. C.* § 770(a)(1), (2).

**15.** 11 *Del. C.* § 762(a).

**16.** 11 *Del. C.* § 454.

**17.** *Scott v. State*, 7 A.3d 471, 479 (Del.2010).

did not present evidence that KK was eighteen.

Trial counsel responds to say Phlipot showed him social media—"My Space" postings—wherein KK allegedly said she was eighteen. Trial counsel states he was reluctant to use these postings as it could place his client in a negative light, raise issues of invading her privacy as they were after his arrest. He believed her first two statements either not saying or denying there had been intercourse were a sound basis to attack her credibility in the third statement and at trial that there had been intercourse.

The current claim is that trial counsel's unfamiliarity with the law on mistake about age meant, instead, he chose to ignore this evidence about her being eighteen. First, assuming that to be the case, his decision not to use it is not unreasonable. Those kind of counsel decisions in cases such as this—young victim, defendant fifteen years older—are difficult. In addition, when evaluating ineffectiveness claims the courts are to avoid the distorting effects of hindsight in evaluating such decisions.[18] The Court finds no ineffectiveness in trial counsel's decision to avoid using evidence that KK said she was (is). Finally, as trial counsel recites in his affidavit, Phlipot wanted him to pursue a claim of factual innocence, and he denied there had been intercourse, all clearly contrary to introducing evidence of her age.[19]

What trumps Phlipot's second claim, however, is that there was legally no defense of mistake or age available to Phlipot.

The second claim is without merit.

## C

Phlipot contends he wanted trial counsel to introduce evidence that he and KK had sex while staying at the BWI Airport motel not seek to have it excluded. The sex in Maryland, he now says, explains the reference to sex in some of the emails leaving the jury to connect the email references to sex to the alleged conduct in Delaware, instead. To seek this exclusion, he argues, is ineffective assistance of counsel.

Trial counsel states he has no recollection that Phlipot told him there was intercourse while they were in Maryland. The evidence of intercourse in Maryland came from KK. Trial counsel's affidavit states he sent Phlipot a copy of his motion to exclude the Maryland evidence (along with other evidence) but he never objected to him doing so. In an affidavit Phlipot, in his response to trial counsel's affidavit, supplied more expanded version of his motion, he says he told counsel that there had been intercourse when they were in Maryland.[20]

Phlipot now argues that his trial counsel erred in seeking to exclude the testimony about the Maryland activities. The State clearly wanted to have the testimony. There were two pre-trial office conferences during which the Maryland evidence was reviewed, the second being the more substantive and longer one. Defense counsel objected to it, and one reason was that it is or was not a criminal act in Maryland. But he was also concerned because it involved Phlipot more in aiding KK's attempt to flee to Chicago. He did not believe this was favorable evidence. The judge hearing the argument on this evi-

---

18. *Gattis v. State,* 697 A.2d 1174, 1178 (Del. 1997).

19. Sensor affidavit, p. 2.

20. Phlipot response to trial counsel affidavit, April 20, 2012.

dence ruled it out as overly prejudicial and ruled it inadmissible.[21]

It is unnecessary for the Court to resolve the conflict between what Phlipot is now saying and what trial counsel says Phlipot did or did not say prior to trial. The State attached in its reply to the motion several emails Phlipot had sent in which he writes of his deceptions.[22] At trial Phlipot's strategy was to show that a third person, specifically a male friend of KK's, authored the many incriminating emails placed into evidence; a defense the jury obviously rejected as demonstrated by its guilty verdicts.

The Court views Phlipot's latest version to be no more than "sour grapes" after the fact. It attaches no credibility to his new version of events. Further, trial counsel's efforts to exclude the evidence was reasonable.

This claim lacks merit.

### D

■ Phlipot next asserts trial counsel was ineffective in failing to cross examine Benjamin Herholdt and bring out his significant bias against him. He was a male friend of KK's and was the person with whom she stayed after she left her father and before Phlipot took her to Maryland, and is the person Phlipot tried to show sent all the emails. The claim is that Herholdt testified about some cuddling he saw—but not intercourse—but that trial counsel failed to bring out his close friendship with KK and bias.[23]

Herholdt's trial testimony was that he had known KK since seventh grade. He described their friendship as close but not

romantic. In January, 2009, KK came to his house to stay to start her effort to run away. One night KK left with Phlipot and stayed over night. Some nights she stayed with him Herholdt, but Phlipot did not come over. On another night he saw KK and Phlipot cuddling, clothed, but in his bed.

Herholdt testified he went with Phlipot on February 27, 2009 for the latter's hearing in Family Count on the latter's charge of child endangering. Phlipot, Herholdt said, expressed hope that KK would not give into her grandmother and say there was sex between them. After the hearing while riding back to Herholdt's house, Phlipot threatened him, Herholdt testified, KK and her grandmother. In a statement introduced through 11 *Del. C.* § 3507, Herholdt said Phlipot texted him several days after the Family Court hearing. He asked Herholdt to cover for him if the State Police contacted him.

On cross examination, trial counsel brought out (1) that Herholdt had not alerted the police about a seventeen year old running away, (2) that he was upset KK was spending the night with Phlipot, (3) KK and he had a close relationship—which Herholdt described as brother/sister—and (4) that he was angry as anyone would be that there was a sexual relationship between the two. He also testified KK told him that Phlipot was communicating with her through a Yahoo! account. Trial counsel states, therefore, he adequately brought out Herholdt's bias against Phlipot.[24] Which, in fact, the evidence independently supported.

The Court concurs. Whether the jury believed KK and Herholdt, in fact, had had

---

**21.** Pre-trial ruling, Bradley, J., April 29, 2010.

**22.** State's Response, Ex. B.

**23.** In his pre-sentence interview Phlipot blames Herholdt for all the emails which were introduced against him at trial.

**24.** Trial counsel's affidavit, p. 5.

a sexual relationship is of little significance in the grand scheme of the trial. His potential for bias was more than adequately brought out.

This claim lacks merit.

### E

█ Phlipot contends trial counsel was ineffective because, by moving to exclude the emails, he "goaded" the prosecutor into seeking a re-indictment which added charges to the original four counts of rape. Phlipot in his affidavit states that trial counsel told him of the motion to exclude. But he now says he opposed filing the motion because, while there was sex in Maryland, the emails would be used to show there had been sex in Delaware, which he denies.[25]

The Court will first examine the issue of counsel filing the motion to exclude allegedly against Phlipot's wishes. Trial counsel's response to Phlipot's claim is that he advised Phlipot that the emails were very damaging and everything should be done to exclude them. He sent Phlipot a copy of the motion who, in turn, he says returned it with comments, but none of them, trial counsel reports, were to withdraw it. Phlipot denies that he knew in advance that trial counsel was going to file the motion to exclude. Further, he now says that he asked that the motion be withdrawn but trial counsel refused to do so.[26]

It is unnecessary for the Court to resolve this conflict. First, this situation is likely one where trial counsel's judgment and decision prevails—to file the motion or not. The second reason is the pre-trial ruling denying Phlipot's motion to sever

the non-rape charges in the re-indictment form the rape charges. The judge who ruled on that motion noted several things, one of which was the difficulty in trying non-rape charges separately from the rape charges because of the interconnection of the emails to the rape charges. He added "[a]ll of these emails would in all likelihood come in on the rape charges anyway."[27] For what it is worth, the Court agrees. Many of them show consciousness of guilt. Besides the denial of the motion to sever was not an issue raised on appeal.

The Court finds no basis to find counsel erred in filing the motion to exclude, even if against Phlipot's wishes; a switch in Phlipot's position with which the has credibility concerns.

The second part of this claim is that the filing of the motion "goaded" the State to seek re-indictment which added the numerous tampering and contempt charges to the original indictment containing the four charges of rape fourth degree. Phlipot now claims that the original, but not the ultimate, prosecutor on the case indicated early in the proceedings that he was contemplating adding charges related to the emails. The claim of ineffectiveness is that this prompted trial counsel seek to suppress them—as the product of an invalid warrant—or to exclude them as unduly prejudicial.

The motions to suppress and to exclude were filed July 16, 2009. The new indictment was returned October 26, 2009 after which trial counsel moved to sever. The ultimate trial prosecutor, who supplied the State's response to the current motion, states he held off adding the additional charges while plea negotiations were underway on the rape charges. Once it was

---

**25.** Phlipot affidavit, 10, Motion for postconviction relief, April 20, 2012.

**26.** *Id.*

**27.** Pre-hearing transcript, March 17, 2010, at p. 8.

determined those negotiations were going nowhere, the re-indictment was sought.

The Court finds the State was hardly "goaded." It was proper conduct in an effort to resolve the more serious charges to hold back on charges which, with the evidence it had, were clearly warranted. Since there was no improper prosecutorial conduct in this, trial counsel cannot be found to have "goaded" the State.

This claim lacks merit.

### F

This claim is confusing. It is not directed to trial counsel. It is directed at an attorney who apparently initially represented Phlipot. Key information is not supplied and Phlipot's affidavit offers nothing about it. The claim appears to be that the earlier attorney violated attorney client privilege by telling the police where KK was and what she was doing.

In his presentence interview, however, Phlipot said that KK was running away. He knew he had done wrong, *so he* reported it.

This claim, for what it appears to be, is without merit or any substantive back-up to properly evaluate it.

### G

■ Phlipot faults trial counsel for failing to file a motion under 11 *Del. C.* § 3508 to have the Court rule that KK's prior, alleged, sexual history be admissible at trial. Phlipot argues trial counsel should have done so as KK's credibility was such a key issue.

Trial counsel states he did not believe whatever evidence there was would be persuasive. He was concerned about whether any such evidence would be relevant since Phlipot was claiming factual innocence not consent. He also says that the information he had, counseling records, was insufficient to make the necessary offer under 11 *Del. C.* § 3508(a)(2).[28] Trial counsel further states he thought he had plenty to use to attack KK's credibility based on her prior inconsistent statements.

Phlipot responds that the records are relevant since they apparently reveal alleged sexual abuse by different perpetrators against KK.

As the State correctly points out no one has attached any records to the motion, trial counsel's reply affidavit or Phlipot's response. Based on Phlipot's (current counsel's) response to trial counsel's affidavit, there is every reason to believe he knows what the records are and what they say but offers nothing. As far as the Court is concerned, this is not a specific enough claim which Rule 61 requires and it must be rejected.[29]

### H

■ Trial counsel is accused of prematurely moving to exclude emails as there was no expert testimony or other foundation for their admission. This enabled the State, it is argued, to have time to get an expert report and get a State Police computer expert involved. In turn, the emails became admissible.

In his reply to this claim, trial counsel points to the Sussex County Criminal Case Management Plan requiring all pretrial motions to be filed within ten days of first case review. To preserve his right to challenge the emails at trial, he filed the motion to exclude. Trial counsel believed the

---

**28.** (2) The written motion shall be accompanied by an affidavit in which the offer of proof shall be stated.

**29.** *Wright v. State,* 671 A.2d 1353 (Del.1996).

admissibility of the emails was a central issue.

Phlipot's response to these statements is that trial counsel misunderstands the Criminal Management Plan. Motions such as the one in issued could have been filed later, if at all.

The State chimes in by saying it is unclear it needed expert testimony as a predicate to the admissibility of the emails. It obtained the service of State Police expert as a matter of caution.

There are three sets of emails and/or records involved in this claim. One is Yahoo! The other two are Mediacom and Beebe Hospital (where Phlipot worked). The State says that it supplied these records to trial counsel as business records.

Trial counsel, in an omnibus motion filed July 16, 2009, raising a number of issues, included an attack on the Yahoo! records for insufficient authentication and the other emails for lack of foundational expert testimony. Thereafter, the State did obtain an expert report and provided Yahoo! authentication to trial counsel.

Det. Scott Garland was the State Police high technology unit forensic examiner in this case. This testimony was important on explaining how Phlipot used a Yahoo! account in such a way where it would be difficult to determine that it was read and by whom. He also traced some of the emails to Phlipot IP's at his residence.

Phlipot had no expert testimony but used Det. Garland in an attempt to show how others—implying Herholdt—could have originated the incriminating emails, including ones coming from Beebe Hospital. Trial counsel also brought out that Phlipot's PCs were not inspected.

The Yahoo! emails are from "Rob Smith" and KK testified he had told her had set up that account. After that name was: "KM1432@yahoo.com" The emails were addressed to "KMForever<1432@yahoo.com." She testified the "K" was for her name and the "M" was for Matt, Phlipot's first name. The numbers 143, she testified, meant "I love you." She said she used the Dover Public Library to read the emails. The "code" is seen throughout the emails in State's Exhibit eight and ten.

Based on KK's testimony, it is probable this judge would have admitted the emails even without expert testimony. The expert testimony provided a good gloss to some of the technical side to the case. Based on all this, the Court cannot find trial counsel erred in filing his omnibus motion when he did. He also was able to use the exert to provide a basis that Herholdt had sent the emails, or at least try to create a reasonable doubt about who authored them.

There were other emails which Phlipot sent including a picture of himself with a heart on his forehead and of the Cape Henlopen watch tower where he had given her the ring in January, 2009. These emails, too, were sufficiently authenticated independent of expert testimony to be admissible; many were copies KK had saved, printed and turned over to the police. Finally, the Court will not presume that, absent trial counsel's motion, the State would not have done what it needed to meet its burden of proof. In sum, the Court cannot find trial counsel breached any objective standard.

This claim lacks merit.

## I

■ Phlipot faults counsel for failure to file an affidavit with his motion to suppress the evidence obtained from Yahoo! pursuant to a search warrant. There were various grounds argued in the motion (1) lack of probable cause, (2) lack of signatures, and (3) failure of the *affiant* to disclose

KK's two prior statements that there had been no intercourse with KK.

Another judge of this Court ruled on Phlipot's motion in January, 2010. He ruled there was probable cause for the warrant, and he explicitly addressed the issue of KK's two prior inconsistent statements not being mentioned in the affidavit of probable cause. The issue, of course, which he addressed arises under *Franks v. Delaware*.[30] An affidavit may be attached where there is a showing that the alleged omissions were made knowingly, intentionally or with a reckless disregard for the truth.[31] A defendant must make a substantial preliminary showing to get a hearing on allegedly "defective" affidavits.

The complaint now made is that trial counsel did not submit an affidavit to support his *"Franks"* motion to make out his substantial preliminary showing. The judge reviewing trial counsel's motion specifically noted that counsel had brought up the subject of KK's first two statements in which she denied there had been intercourse. Trial counsel also argued to the Court the unreliability of even the third statement because of the grandmother's intervention, KK's trouble with her father, etc.

The Court's ruling on the *"Franks"* challenge was:

> As to the victim's reliability, considering her behavior at all three interviews, I find that her conduct is consistent with a troubled 17–year old child. She wanted to get away from her father, which meant either harming him or running away, and she was allegedly willing to do either. She was angry with the world in general and she engaged in, at

a minimum, a romantic relationship with an adult male. In describing her sexual relationship with Defendant, the victim provided dates, times, places and specific acts. These facts were included in the affidavit. The fact that the victim did not initially provide this information does not render it unreliable. I find the victim's statements in the third interview to police to be credible.

> Even assuming *arguendo* that the police acted recklessly in omitting information regarding the first and second interviews, I find the victim's statements in those interviews, when she was speaking out of anger and desperation, are the ones lacking credibility.

> Finally, I reject Defendant's argument that if all the information had been included in the affidavit there would have been no finding of probable cause. In fact, the full story strengthens the showing of probable cause. A narrative of the three interviews makes a compelling story of an teenage who had an unhappy home life and turned to the wrong places to resolve her problems, first to an older man, then to relatives living in a different state. It is no surprise that after spending time in a juvenile detention facility in West Virginia, after having been removed from a train against her will, the victim was distraught and easily angered. In satisfaction of the analysis required by *Franks v. Delaware*, I conclude that the search warrant application would have been granted if the information regarding all three interviews was included.[32]

This Court is unaware of any requirement that a defendant's substantial prelim-

---

**30.** 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

**31.** *Franks v. Delaware*, 438 U.S. at 155–56, 98 S.Ct. 2674.

**32.** *State v. Phlipot*, ID No. 0903021873, January 11, 2010. (Citations omitted).

inary showing must only be in affidavit form. Nor has any authority been cited to the Court there is. Therefore, there can be no counsel error for not doing something which is not required. More importantly, trial counsel made a substantial showing which the earlier judge directly addressed, and the motion was not denied because of a failure to supply an affidavit. For these reasons, too, there was no counsel error. In sum, there was no counsel deficiency and no ineffective assistance. Quite the contrary was shown by what trial counsel did.

In a sense this claim of ineffectiveness is a repackaged argument made in the trial court which was not the subject in the direct appeal. This Court sees no error in the earlier ruling and it is unlikely that ruling would have been reversed. Phlipot's current motion supplies no authority that it would have.

In another sense, this claim is procedurally barred as one which could have been raised on direct appeal.[33] No procedural relief is present.[34]

This claim lacks merit.

### Conclusion

For the reasons stated herein, Matthew Phlipot's motion for postconviction relief is **DENIED.**

**IT IS SO ORDERED.**

---

**33.** Super. Ct. Cr. R. 61(i)(3).

**34.** Super. Ct. Cr. R. 61(A),(B); Super. Ct. Cr. R. 61(i)(5).

