SUPERIOR COURT
OF THE

**RICHARD F. STOKES**
*JUDGE*

SUSSEX COUNTY COURTHOUSE
1 THE CIRCLE, SUITE 2
GEORGETOWN, DE 19947
TELEPHONE (302) 856-5264

May 24, 2017

Matthew M. Phlipot
SBI # 00595824
Sussex Correctional Institution
P.O. Box 500
Georgetown, DE 19947

      RE: *State of Delaware v. Matthew M. Phlipot*,
         Def. ID# 0903021873

DATE SUBMITTED: May 4, 2017

Dear Mr. Phlipot:

Defendant Matthew M. Phlipot ("Defendant" or "Phlipot") has filed his second Motion for Postconviction Relief pursuant to Superior Court Criminal Rule 61 ("Rule 61").[1] For the reasons expressed below the motion is **DENIED**.

On June 10, 2010, after a jury trial, Defendant was found guilty of two counts of Rape in the Fourth Degree, six counts of Witness Tampering, 27 counts of Criminal Contempt/Disobedience, and one count of Falsely Reporting an Incident. In this Postconviction Motion Defendant does not mention the Witness Tampering or Criminal Contempt charges, his only grievances concern the Rape in the Fourth Degree charges. On August 10, 2010, Defendant was sentenced as follows: for the first count of Rape in the Fourth Degree, five years at Level

---

[1] The applicable version of Rule 61 is that effective on June 4, 2014, as amended by an order of this Court dated March 23, 2017.

1

Five; and for the second count of Rape in the Fourth Degree, 15 years at Level Five, suspended after five years and the successful completion of Family Problems for ten years at Level Four home confinement or work release, suspended after six months for two years at Level Three.[2] Defendant filed an appeal to the Delaware Supreme Court on September 9, 2010. The Supreme Court affirmed the conviction on May 3, 2011.[3]

On March 2, 2012 Defendant filed his first Postconviction Motion. On December 13, 2012, Judge Herlihy denied the Motion.[4] On April 25, 2013, that decision was affirmed by the Delaware Supreme Court.[5] Additionally, Defendant filed an Application for Writ of Habeas Corpus in Federal Court. On April 27, 2015, the Application was determined to be time-barred and, therefore, denied.[6] No certificate of appealability was issued.[7]

On March 16, 2017, Defendant filed his second Motion for Postconviction Relief. He makes two claims: (1) new exculpatory evidence has come to light regarding the IP address used to send emails which showed that the victim ("victim" or "K.K") planned to make false statements at trial, and (2) exculpatory evidence was suppressed through prosecutorial misconduct, primarily that the Prosecutor threatened Phlipot with new charges if he attempted to introduce certain emails at trial.

The first step in evaluating a motion under Rule 61 is to determine whether any of the procedural bars listed in Rule 61(i) will force the motion to be procedurally barred.[8] Both Rule

---

[2] On August 10, 2010, Defendant was also sentenced for the six counts of Witness Tampering and the 27 counts of Criminal Contempt.
[3] *Phlipot v. State*, 19 A.3d 302, 2011 WL 1716366 (Del. May 3, 2011)(TABLE).
[4] *State v. Phlipot*, 64 A.3d 856 (Del. Super. Ct. 2012).
[5] *Phlipot v. State*, 65 A.3d 617, 2013 WL 1798946 (Del. Apr. 25, 2013)(TABLE).
[6] *Phlipot v. Johnson*, 2015 WL 1906127, at *7 (D. Del. Apr. 27, 2015).
[7] *Id.*
[8] Super. Ct. Crim. R. 61(i) provides:

61(i)(1) and (2) require this motion to be summarily dismissed. First, a motion for postconviction relief cannot be filed more than one year after the judgment is final.[9] Given that Defendant's conviction was final on May 3, 2011, his motion is time-barred. Additionally, any successive motion for postconviction relief is barred by Rule 61(i)(2) unless the Defendant has:

(i)     [pled]...with particularity that new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which [he] was convicted; or

(ii)    [pled]...with particularity a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to the movant's case and renders the conviction or death sentence invalid.[10]

---

(i) Bars to Relief. (1) *Time limitation.* A motion for postconviction relief may not be filed more than one year after the judgment of conviction is final or, if it asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final, more than one year after the right is first recognized by the Supreme Court of Delaware or by the United States Supreme Court.

(2) *Successive motions.* (i) No second or subsequent motion is permitted under this Rule unless that second or subsequent motion satisfies the pleading requirements of subparagraphs (2)(i) or (2)(ii) of subdivision (d) of this rule. (ii) Under paragraph (2) of subdivision (b) of this Rule, any first motion for relief under this rule and that first motion's amendments shall be deemed to have set forth all grounds for relief available to the movant. That a court of any other sovereign has stayed proceedings in that court for purpose of allowing a movant the opportunity to file a second or subsequent motion under this rule shall not provide a basis to avoid summary dismissal under this rule unless that second or subsequent motion satisfies the pleading requirements of subparagraphs (2)(i) or (2)(ii) of subdivision (d) of this rule.

(3) *Procedural default.* Any ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the movant shows (A) Cause for relief from the procedural default and (B) Prejudice from violation of the movant's rights.

(4) *Former adjudication.* Any ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred.

(5) *Bars inapplicable.* The bars to relief in paragraphs (1), (2), (3), and (4) of this subdivision shall not apply either to a claim that the court lacked jurisdiction or to a claim that satisfies the pleading requirements of subparagraphs (2)(i) or (2)(ii) of subdivision (d) of this rule.

---

[9] *See* Rule 61(i)(1)
[10] *See* Rule 61(i)(2); 61(d)(2)(i), (ii).

Defendant has failed to make this showing. He claims that new evidence has been discovered which proves his innocence. Defendant provided copies of two emails sent from an account associated with a "Cullen Jones" which seem to propose that the sender will truthfully testify in court only if Defendant provides him or her with $5,000 in cash. Defendant claims that these emails were sent by the victim. According to Defendant, truthful testimony by the victim would have exonerated him.

Defendant further claims to have recently learned how to obtain the IP address from which an email was sent, information or knowledge that he did not possess at the time of the trial. In making this discovery, Defendant learned that the IP address used to send the emails in question was an IP address previously used by the victim. Further, Defendant states that the Prosecutor was aware of these emails at the time of the trial, but would not allow the evidence to be introduced. In Defendant's opinion, this was due to the Prosecutor's knowledge, via a computer expert's IP address analysis, that the victim was the only possible sender of the incriminating emails. Therefore, he claims that the suppression of this evidence, coupled with his lack of ability to ascertain the IP address at the time of trial, resulted in an improper verdict.

The only way for Defendant to overcome the bar found in Rule 61(i)(2) would be to show that new evidence exists that creates a strong inference that he is actually innocent of the charges for which he was convicted. The United States District Court for the District of Delaware has already adjudicated whether or not new evidence in a slightly different context proves Defendant's actual innocence.[11] The Court stated the standard as follows: "...a petitioner only meets the threshold requirement [for overcoming the AEDPA's time-bar by asserting he has new evidence demonstrating his actual evidence] by 'persuading the district court that, **in light of the new evidence**, no juror, acting reasonably, would have voted to find him guilty beyond a

---

[11] *Phlipot v. Johnson*, 2015 WL 1906127 (D. Del. Apr. 27, 2015).

4

reasonable doubt.' An actual innocence claim must be based on 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial.'"[12]

Defendant's argument to the District Court was based upon a December 9, 2014 Affidavit provided by the Defendant's wife which stated that he was home on the Wednesday night that the crime was alleged to occur. According to the State, the crime took place at Phlipot's home. Yet, the victim could never say for sure whether the crime had occurred on Wednesday or Thursday night. Phlipot asserted that this Affidavit proved that he was actually innocent.[13] However, the District Court found that the Affidavit was not "new evidence" that was unavailable at the time of trial, so the standard for overcoming the time-bar was not met.[14] Judge Andrews wrote, "Ms. Phlipot's declaration that Petitioner was not at their home in Lewes on Wednesday night, January 21, 2009 does not constitute 'new' evidence for the purposes of the *Schlup* standard, because this information was available to Petitioner through the exercise of reasonable diligence at the time of his trial."[15] Thus, this Court considers whether or not Defendant would have had access to this IP address evidence at the time of trial.

There is no reason to believe that Defendant could not have accessed this information before trial, despite his claims of recently learning how to obtain an IP address. As will be discussed later, Defendant set up an email system for himself and the victim after they were ordered to have no contact by the Family Court, which would allow them to secretly communicate. This shows special knowledge of internet technology. Therefore, Phlipot's

---

[12] *Id.* (emphasis in original)(internal citations omitted).

[13] *Id.* at *5.

[14] *Id.* at *6. The District Court also questioned the reliability of the Affidavit, which further buttresses the idea that Defendant has a history of acting deceptively. Judge Andrews noted that the Affidavit was not notarized, so it was impossible to confirm the identity of the purported signer. Also, Ms. Phlipot's three and a half year delay in presenting this Affidavit calls the validity of the information further into question.

[15] *Id.*

5

assertion that he did not have the ability to access the IP information at the time of trial is unpersuasive.

The District Court also examined whether it was more likely than not that no reasonable juror would have found Defendant guilty even if Ms. Phlipot had testified that he was not at their Lewes home on the Wednesday night in question. Judge Andrews concluded that Ms. Phlipot's Affidavit would not have convinced a reasonable juror of Defendant's innocence, especially considering that the victim was unsure of the exact night that the crime occurred. He stated, "No matter how one looks at this case, Petitioner did not have many good choices as to how to defend against the charges. Petitioner does not now thread the needle in such a way that the Court can conclude that his new evidence leads to the conclusion that no reasonable jury would have found him guilty."[16]

When applying the same test to the assertions Defendant made in this Rule 61 Motion, this Court also reaches the conclusion that no reasonable juror would find Defendant to be innocent, even in light of the IP address evidence. Defendant has to show that the emails combined with the information regarding the IP address would make it so no reasonable juror would find him guilty. Here, the Court is not persuaded by Phlipot's argument, because it believes that this scheme regarding the emails and IP address is another example of Defendant's history of deception.

Defendant has long engaged in deceptive behavior; therefore, his latest argument is merely a new attempt to game the system. At the various stages of this case, both the Delaware Supreme Court and the Delaware Superior Court have referenced Phlipot's deception. In the Supreme Court's May 3, 2011 decision affirming Defendant's conviction, the Court stated that he "continued seeing, calling, and e-mailing K.K. Many e-mails were written in an attempt to

---

[16] *Id.* at *7.

convince K.K. not to tell anyone about her sexual relationship with Phlipot and to discourage her from testifying against him."[17] For these actions, Defendant was charged with six additional counts of Tampering with a Witness, 27 counts of Criminal Contempt, and one count of Falsely Reporting an Incident.[18]

The Superior Court also detailed Defendant's deception in the denial of his first Rule 61 Motion. Judge Herlihy noted Defendant's efforts to continue correspondence with the victim, even after the issuance of a no contact order by the Family Court. The opinion reads, "Despite the no contact order, Phlipot sent K.K. numerous emails. He even went so far as to create a special Yahoo! account. That account, in so many words, enabled him to create a message for K.K. to read but there would be no obvious 'sent' or obvious 'received.'"[19] This action demonstrates both Defendant's intention to circumvent the Family Court's no contact order as well as his sophisticated understanding of computer technology. This lends additional support to the idea that Defendant's claims of actual innocence are without merit because it is apparent that Phlipot is willing to use deceptive tactics to maneuver around consequences he does not like.

Further, Defendant argued in his first Rule 61 that his trial counsel prematurely moved to exclude these emails, as there was no expert testimony or other foundation for their admission.[20] He believes that this error enabled the State to have an opportunity to get an expert report and involve a State Police Computer expert (Det. Garland), which provided for the admissibility of the emails.[21] Judge Herlihy noted that it is unlikely that the State's foundational evidence was of consequence, given that the emails likely would have been admitted on the basis of K.K.'s

---

[17] *Phlipot v. State*, 2011 WL 1716366, at *1 (Del. Super. Ct. May 3, 2011).
[18] *Id.*
[19] *State v. Phlipot*, 64 A.3d 856, 859 (Del. Super. Ct. 2012).
[20] *Id.* at 864.
[21] *Id.*

7

testimony only.[22]    Moreover, the testimony given by Det. Garland helped to flush out Defendant's efforts to circumvent the Family Court no contact order by providing "a good gloss to some of the technical side to the case."[23]   It is likely that Defendant attacked this evidence because it undercuts his blame-shifting argument that someone else, such as the victim's friend Ben Herholdt, authored the emails in an attempt to frame Defendant.[24]

Later in the opinion, Judge Herlihy also commented on Phlipot's claim of ineffective assistance of counsel with regard to his Motion to Suppress the evidence obtained from Yahoo!. He stated that this claim was "a repackaged argument made in the trial court which was not the subject in the direct appeal."[25]   Thus, Defendant has an early history of presenting frivolous arguments to the Court when he believes it could be beneficial and attempting to manipulate the facts so that they can best benefit his case.

Additionally, Defendant took issue with trial counsel's failure to raise the defense that Defendant believed the victim was 18 or older.[26]   He sought to persuade trial counsel to introduce evidence showing that the victim had made representations that she was over the age of 18.[27]   However, Phlipot sought to simultaneously pursue a claim of factual innocence and he denied that there had been intercourse.[28]   These representations were clearly contrary to introducing evidence of the victim's age.[29]   Therefore, the Court held that there was no merit to the ineffective assistance claim.  Further, Defendant missed the key point that there is no defense of mistake of age to a Fourth Degree Rape charge.  Again, this claim is an example of Phlipot's deceptive and manipulative behavior.

---

[22] Id.
[23] Id. at 865.
[24] Id.
[25] Id. at 867.
[26] Id. at 861.
[27] Id.
[28] Id.
[29] Id.

8

Furthermore, Defendant's conflict with his trial counsel concerning whether or not evidence that he and the victim had sexual intercourse at a motel near the BWI Airport should be introduced also demonstrates his continued deception. Defendant claimed that he asked trial counsel to introduce this evidence, but that counsel moved for the evidence to be excluded instead.[30] Trial counsel did not remember Defendant revealing this information. Judge Herlihy ruled that it was unnecessary to sort out the conflict between Defendant's assertions in his Rule 61 Motion and what trial counsel says he did or did not say prior to trial.[31] However, the decision noted that "The State attached in its reply to the motion several emails Phlipot had sent in which he writes of his deceptions."[32] Lastly, the Court pointed out that this argument was "no more than 'sour grapes' after the fact" and "attached no credibility to his new version of events."[33]

Finally, the Court noted that Defendant's argument that trial counsel "goaded" the State into pressing additional charges for tampering and contempt was without merit. According to Judge Herlihy, it was reasonable for trial counsel to seek to have the emails excluded given that they were very damaging to Defendant.[34] It was also reasonable for the State to have held off on bringing the tampering and contempt charges, but to move forward with a re-indictment once the evidence for these charges was sufficient.[35] This is yet another example of Defendant's attempts to manipulate the facts to benefit his cause.

Considering the foregoing, the proffered evidence is not reliable. Even if the evidence had any credibility, it was not newly discovered. The "Cullen Jones" emails were known before

---

[30] *Id.* at 861.
[31] *Id.* at 862.
[32] *Id.*
[33] *Id.*
[34] *Id.* at 863.
[35] *Id.*

trial. Further, if this evidence was offered it would not meet the demanding standard that no reasonable juror would vote to find Defendant guilty beyond a reasonable doubt. Evidence in this case as summarized in the previous decisions shows overwhelming evidence of Phlipot's guilt.[36] This includes, but is not limited to, victim testimony, Defendant's deceptive tactics, and Defendant's consciousness of guilt. The victim first denied that any sexual relationship existed between herself and Defendant, but later gave a detailed account of the sexual misconduct in Delaware. This interview was taken on March 18, 2009, almost six months before the date of the Cullen Jones emails on September 6, 2009 and September 30, 2009. Defendant neither acknowledged nor explained this gap in timing between the victim's interview and the emails. Further, Defendant had Det. Garland's expert report dated December 7, 2009. Therefore, it is clear that he had access to this information before trial, but did not utilize it.

The Court also notes that any of the evidence that Phlipot has called into question in this Rule 61 Motion would only have impeaching value. A new trial will not be granted if the newly discovered evidence is "merely cumulative or impeaching."[37] Since this evidence would not have any substantive value, it would be contravene settled law if a new trial was granted on this basis.

Assuming the prosecutor informed the Defendant that use of the "Cullen Jones" emails would result in additional charges, this position would be appropriate. There was good reason for the prosecutor to question the bona fides of these emails. The present assertion of alleged prosecutorial misconduct is a confirmation of a theme repeated by Phlipot throughout the course

---

[36] *Phlipot v. State*, 19 A.3d 302, 2011 WL 1716366 (Del. May 3, 2011)(TABLE)(discussing the victim's police interview and Phlipot's history of deception); *State v. Phlipot*, 64 A.3d 856 (Del. Super. Ct. 2012)(detailing factual background of this case and Defendant's misconduct); *Phlipot v. Johnson*, 2015 WL 1906127 (D. Del. Apr. 27, 2015)(discussing the strong evidence against Phlipot that would not allow a reasonable juror to concluded that he was innocent).
[37] *Hicks v. State*, 913 A.2d 1189, 1194 (Del. 2006).

of litigation. For example, Phlipot argued that "trial counsel was ineffective because, by moving to exclude the emails, he 'goaded' the prosecutor into seeking a re-indictment which added charges to the original four counts of rape."[38] Also, in his Application for a Writ of Habeas Corpus to the District Court, Phlipot argued that the State violated *Brady v.* Maryland by failing to provide exculpatory evidence to the defense.[39] On more than one occasion Defendant has attempted to unjustifiably blame the prosecution for misconduct as a means to alter the outcome of the case. It is another red herring that is not deserving of serious consideration.

In sum, when examining how this case has progressed, it is clear that Defendant's arguments are not credible, especially in light of his past deception. This second Rule 61 Motion is another attempt to lead the Court astray. Defendant does not meet the requirements of Rule 61(i)(2); therefore, his Motion is procedurally barred.

Considering the foregoing, Defendant's Motion for Postconviction relief is **DENIED**. As Defendant's Motion for Postconviction relief is denied, Defendants Motion for Appointment of Counsel and Motion to Proceed in Forma Pauperis are also **DENIED**.

**IT IS SO ORDERED.**

Very truly yours,

Richard F. Stokes

cc: Prothonotary's Office
    David Hume, Esq.
    Bernard J. O'Donnell, Esq.
    Edward C. Gill, Esq.

---

[38] *State v. Phlipot*, 64 A.3d 856, 863 (Del Super. Ct. 2012).
[39] *Phlipot v. Johnson*, 2015 WL 1906127, at *2 (D. Del. Apr. 27, 2015).